UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
IN THE MATTER OF THE COMPLAINT                              :
                                                            :
                         Of                                 :   **MEMORANDUM
                                                            :   <u>DECISION AND ORDER</u>**
MILLER'S LAUNCH, INC., as owner of a 1978                   :
31-foot motor vessel, and CITY OF NEW                       :   10 Civ. 0872 (BMC)
YORK, DEPARTMENT OF                                         :
ENVIRONMENTAL PROTECTION, as owner,                         :
and MILLER'S LAUNCH, INC., and                              :
MILLER'S LAUNCH, INC., as bareboat charter                  :
or owner *Pro Hac Vice*, of a 1994 34-foot motor            :
vessel, for Exoneration from or Limitation of               :
liability,                                                  :
                                                            :
                                      Petitioners.          :
                                                            :
----------------------------------------------------------- X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 1 8 2010 ★
BROOKLYN OFFICE

**COGAN**, District Judge.

The Limitation of Liability Act, 46 U.S.C. § 30505 *et seq.* (the "LLA"), allows the owner of a seagoing vessel to limit the owner's liability for personal injuries to the value of the vessel, provided that the owner commences an action seeking that relief within six months of receiving notice of a claim. Here, the claimant asserts that he gave notice but the owner did not commence this action until more than six months after that notice, and thus he seeks to dismiss this action as time barred. I find that the notice he gave was inadequate under the statute, and therefore deny the claimant's motion to dismiss.

## BACKGROUND

Petitioners Miller's Launch Inc. ("Miller's Launch") and City of New York, Department of Environmental Protection (together, the "Owners"), are owners of vessels "Tracey Miller" and

1

"IBIS," respectively. Miller's Launch is also owner *pro hac vice*[1] of IBIS. The two vessels were used to transport debris, garbage, and tree trunks from navigable water to large debris containers at the Bowery Bay Sewage Treatment Plant. Marcus Link, the claimant in this action, was an employee of Gaeta Interior Demolition, Inc. ("Gaeta"). On October 3, 2008, he was allegedly moving debris from the containers into Gaeta's garbage trucks when he was injured by a large log that the vessels had transported that day and which fell out of one of the containers.

Following the incident, on October 22, 2008, Link's attorney sent a letter to Miller's Launch:

> Please be advised that this office represents Marcus Link in his claim for injuries sustained in an accident at Tallman Island Water Pollution Control Plant, College Point, New York on October 3, 2008. Please turn this letter over to your insurance carrier so that they can communicate with our office. Failure to hear from your insurance company within two weeks will leave this office no alternative except to commence an action against you without further notice. Please make sure that any and all video/electronic surveillance, photographs of scene, names of witnesses and any and all investigation materials is not compromised in light of pending litigation. Thank you for your time and attention to this matter.

Two days later, Miller's Launch responded to Link's attorney:

> Having tried to reach you by phone with no success; please be advised Miller's Launch, Inc. hasn't any knowledge of the individual Marcus Link nor any accident or job at Tallman Island Water Pollution Control Plant, College Point, New York on October 3, 2008. Please review your records.

For reasons not disclosed on the record before me, despite receiving notice of these inadequacies, Link's attorney failed to follow up with another letter to Miller's Launch.

On November 7, 2008, Link's attorney sent a notice to the City. The letter began with Link's full name and address. It identified his claim as one for "personal injuries and pain and

---

[1] The term *pro hac vice* in this context refers to "one who stands in the place of the owner for the voyage or service contemplated and bears the owner's responsibilities, even though the latter remains the legal owner of the vessel.'" Matute v. Lloyd Bermuda Lines, Ltd., 931 F.2d 231, 235 n.2 (3d Cir. 1991) (internal quotation marks omitted).

2

suffering . . . as a result of the negligence" of the City and the Department of Environmental Protection. It then went on to describe the claim:

> The claim arose on the 3rd day of October, 2008, at approximately 2:30 PM., at Tallman Island Water Pollution Control Plant, 127-01 Powell Cove Road, College Point, New York, when claimant was in the process of unloading a container that was affixed and hooked onto a garbage truck, when a large tree trunk/excess debris which was improperly loaded into the container fell from the container, resulting in the container becoming unstable and partially unhinged from the truck and striking the claimant.

The letter alleged that this was "due solely by reason of the careless, recklessness and negligence" of the City and its agents. It concluded by demanding $5,000,000 for the injuries Link allegedly suffered.

Significantly, the place of the incident identified in the letters, Tallman Island, was incorrect.[2] Link now concedes that neither the City nor Miller's Launch provided services at Tallman Island. He was injured at Bowery Bay, another location owned by the City.

On August 24, 2009, Link filed a personal injury lawsuit in the Supreme Court of New York, County of Queens, against the Owners and other parties for their alleged negligence in loading or maintaining the containers. On February 26, 2010, the Owners commenced this proceeding for limitation or exoneration of liability under the LLA. In compliance with Fed. R. Civ. P. Supp. R. F., the Owners deposited into Court the sums equal to the values of the owners' interests in the vessels – $29,000 for Tracey Miller and $150,000 for IBIS. Link has moved to dismiss the Owners' proceeding for their failure to file a complaint within the six months

---

[2] In his motion to dismiss, Link concedes that his October 22, 2008 letter to Miller's Launch "inaccurately listed the location of the accident." He maintains, however, that the Owners were put on sufficient notice in part because he "clearly testified that the incident occurred in Queens. . . ." Both Tallman Island and Bowery Bay are located in Queens.

3

required by the LLA and Rule F after receiving Link's notices of claim.[3] 46 U.S.C. § 30511; Fed. R. Civ. P. Supp. R. F.[4]

## DISCUSSION

It is undisputed that the state court complaint filed on August 24, 2009 – within six months of the current proceeding – served as proper written notice. See In re Pinand, 638 F.Supp.2d 357, 359 (S.D.N.Y. 2009). The question before the Court is whether Link's prior notices, sent to Miller's Launch on October 22, 2008 and to the City on November 7, 2008, were also sufficient to trigger the six-month limitation. If they were, then the Owners' complaint in federal court was not timely filed.

Vessel owners seeking to limit liability under the Act must file a complaint within six months "after a claimant gives the owner [of the vessel] written notice of a claim." 46 U.S.C. § 30511(a); see also Fed. R. Civ. P. Supp. R. F(1) (Owner must commence action "[n]ot later than six months after receipt of a claim in writing. . . "). Neither the Act nor Rule F set out the requirements for the written notice. It is well settled, however, that formality is not needed; letters sent by claimants to vessel owners may suffice. See Doxsee Sea Clam Co. v. Brown, 13 F.3d 550, 554 (2d Cir. 1994). The standard is "broad and flexible," and courts in the Second Circuit "read[] letters of notice in their entirety and consider[] their 'whole tenor.'" Id. (citing In re Allen N. Spooner & Sons, Inc., 253 F.2d 584, 586 (2d Cir. 1958)). Even notices lacking "specificity" – so long as they refer to potential claims that may exceed the value of the vessel – can still trigger the six-month limitation. Id.; see also In re Complaint of Morania Barge No. 190, Inc., 690 F.2d 32, 34 (2d Cir. 1982) (holding that the six-month limitation is triggered only

---

[3] Link filed a document entitled "Answer to Complaint," which the Court deemed a motion to dismiss as it set forth Link's argument and authority for dismissal.

[4] Link's motion to dismiss also asserted other defenses not addressed in this decision.

4

when there is a "reasonable possibility that the claims would exceed the value of the ship"); In re Allen N. Spooner & Sons, Inc., 253 F.2d 584, 586 (2d Cir. 1958) (Hand, J., concurring) (suggesting that claimant's position in his notice may not be "equivocal" if he hopes to trigger the six-month limitation).

The outer limits of adequacy are probably most apparent from Doxsee. There, the owner had actual notice of the accident and its claims adjuster had therefore already commenced its own investigation into the accident and communicated with the claimant's lawyer, who after some time sent the adjuster the notice letter. The notice letter, however, did not expressly advise that the claimant intended to commence suit. It instead advised the owner that the claimant had retained the attorney "to represent him in a claim against" the owner; it demanded payment of itemized medical expenses of $110,000 (which was less than the $350,000 value of the vessel) pursuant to the owner's obligation to supply maintenance and cure; and it referred to the claims adjuster's file number. Although the letter might have been read as simply demanding $110,000 for maintenance and cure, the Second Circuit held that the letter was sufficient to put the owner on notice of a potential suit that exceeded the value of the vessel:

> [T]he itemization of medical bills in excess of $110,000 clearly was sufficient to inform Doxsee of the reasonable possibility that a substantial damages claim for personal injury in excess of $350,000 would be brought ... . Even if we were to conclude that the letter was ambiguous as to the amount that would be sought ... the burden to seek clarification falls upon [the owner].

Id. at 554-55 (citing In re Allen N. Spooner & Sons, Inc., 253 F.2d at 586-87).[5]

Although Doxsee suggests a liberal standard for judging the adequacy of notice, there are important distinctions between the facts there and in this case. The most significant difference is

---

[5] In light of the liberal standard of notice applied in Doxsee, earlier district court cases applying a more exacting standard may not be persuasive authority. See e.g., In re Complaint of Okeanos Ocean Research Foundation, Inc., 704 F. Supp. 412 (S.D.N.Y. 1989) (finding a notice that correctly identified the vessel and the incident but failed to allege the exact cause of the injuries or their severity to be insufficient).

that in Doxsee, the owner knew exactly to what claim and what potential plaintiff the notice was referring. The owner had employed the claimant and knew of the accident when it happened. The owner's insurance adjuster had already initiated an investigation into the potential claim. The "who, what, when, and how" were already within the owner's ken. By affirming the adequacy of the notice, the Second Circuit was effectively holding that the notice need not repeat that which the owner already knew, nor need it expressly set forth what the owner could reasonably infer from its contents.

In the present case, in contrast, Link was a stranger to the Owners and, by all indications, the accident itself was unknown to them. Because of that, any notices sufficient to alert them to the possibility of suit in excess of the value of their vessels, if not containing express statements of fundamental facts, had to contain at least enough information to allow them to make necessary inferences. See Group Therapy, Inc. v. White, 280 F. Supp. 2d 21 (W.D.N.Y. 2003) (granting summary judgment partly because the notice, which identified claimant only by name and did not explain the cause and type of injuries, was insufficient as the owner had no way to determine how those injuries occurred), aff'd in part, rev'd in part sub nom., Clementi v. Commercial Union Ins. Co., 92 Fed. Appx. 826, 2004 U.S. App. LEXIS 4694 (2d. Cir. 2004). Although the notice to Miller's Launch and the City contained different quantities of information, neither was sufficient to alert them to the possibility of suit in excess of the value of their vessels.[6]

---

[6] In his motion to dismiss, Link relies on In re Complaint of Bayview Charter Boats, Inc., 692 F. Supp. 1480 (E.D.N.Y. 1988), to suggest that a sufficient notice need only contain the date of the accident and the injuries suffered. Bayview stands for no such proposition. One of the letters in that case, after noting the date of the accident, stated in part:

> Please be advised we represent Joseph Russo in connection with the serious personal injuries he sustained on the above date due to the gross negligence of your employee Jack Goeghan in connection with the operation of an outboard motor boat in the course of his employment with Bayview Charter Boats. Please refer this letter to your insurance and/or legal representative . . . .

The notice to Miller's Launch was obviously the least informative of the two. It provided Link's name, the date of the accident, and the possibility of suit for an unspecified amount, but nothing further. Since Link was not an employee of Miller's Launch, Miller's Launch would be at sea in trying to determine who he was. If the written notice had at least identified Link's employer (Gaeta), Miller's Launch might have been able to inquire of its contract partners to try to find out who he was.[7]

The omission of plaintiff's employer was not the only crucial piece of missing information. Even more important was the absence of the name of the Miller's Launch vessel involved in the accident. I do not see how an owner can be expected to make a judgment as to whether a potential claim is in excess of the value of its vessel when it is given neither the name of the vessel nor sufficient information to discover the name. It must be remembered that the determination to commence a limitation of limitation proceeding is not just a question of paying $350 for a federal index number and drafting a petition; the owner must post security for the vessel, which can be a significant expense. See Spooner, 253 F.2d at 586 (Hand, J., concurring) ("If all that the owner had to do was to file a petition, it might well be that even the warning of a possible claim would be enough, but he must do more; he must either file security for the full value of his ship, or surrender her to a trustee.").

---

Id. at 1485. Drawing on Spooner, which requires claimants to notify the owners about the "the details of the incident" and a potential claim, the court found that the letter sufficiently informed the owner of the vessel. Absent in Link's notices are details that would have done the same in the present case; unlike Goghan, Link identified neither his employer nor the vessel involved (or at least how his incident was connected to one).

[7] In addition to the two notices, Link argues that his allegations in a deposition taken pursuant to N.Y. Gen. Mun. Law Section 50-h(1) put the Owners on notice about his claim. He also refers to a telephone conversation his attorney had with Mary Jo Pluchino of Miller's Launch on October 29, 2008, informing her that Link was a Gaeta employee. In her declaration, Pluchino denies that Link mentioned anything about Gaeta in their conversation. The dispute over what was said illustrates why the LLA and Rule F require written rather than oral notice.

In addition, any inquiry that Miller's Launch might have made to give meaning to the notice was effectively thwarted by the notice's listing of the wrong location of the accident. This was no trivial detail; the place the accident happened may have been the most material fact necessary to put Miller's Launch on notice. An owner would naturally check the records of its operations at the place where the claimant stated that the accident had occurred; if those yield nothing, there is, as a practical matter, no place else to inquire. Without additional details, the letter may as well have been anonymous as it referred to injuries suffered by an unknown individual, resulting from an unspecified job, at a location to which the Owners apparently supplied no vessels.

Link makes the point that both the wrong location given and the actual accident location were in Queens, but that strikes me as not helpful; Queens is New York City, which is in New York State, which is in the United States. Since the stated location of the accident was wrong, an exercise in proximate geography would seem no more likely to yield the actual location than an exercise in proximate phonetics. I think it is too much to ask the owner to undertake either, and in contrast, it puts virtually no burden on the claimant's lawyer to find out where his client was injured and communicate it to the owners. No information as to the location of the accident would have probably itself made the notice inadequate; misinformation was worse. A claimant seeking to give notice cannot mislead the owner with factually inaccurate information and still expect the notice period to run. See Morania Barge, 690 F.2d 32 (where claimant affirmatively stated that his claim was less than the value of the vessel, notice was inadequate to start the limitations period).

Finally, I find it significant that Link's lawyer failed to supplement his inadequate notice following telephone and written inquiries from Miller's Launch. This was precisely the scenario

hypothesized by Judge Learned Hand, concurring in <u>Spooner</u>, where he expressed the view that if a notice was vague, the owner could effectively toll the six month period by requesting more information: "[I]t is indeed reasonable to require [an owner faced with an equivocal notice] to make the claimant define his position. If the claimant refuses to do so, it may be that the period does not begin to run until he does . . . ." 253 F.2d at 586-87. If Link's lawyer was not interested enough to supplement his inaccurate and incomplete letter with another letter, Miller's Launch did not have to be interested either.

The notice to the City gave more details of the accident itself, but ultimately suffers from the same infirmities. The stated location was wrong and it identified neither the vessels nor Link's employer. In fact, the description of the accident itself gave no indication that it was maritime-related; the notice made it appear as if the accident was related solely to land vehicles. I cannot see how this notice could have alerted the City that it needed to make a determination of whether to commence a proceeding under the LLA.

The requirements of notice under the LLA are minimal enough, but the written notice must be sufficient to allow the owner "to investigate whether the amount of the claim or other claims likely to be the subject of litigation arising out of the same occurrence may exceed the value of his ship." <u>Morania Barge</u>, 690 F.2d at 34. The purported notices here did not do that, and Link's motion to dismiss is accordingly denied.

**SO ORDERED.**                                        /s/(BMC)

                                                    ───────────────
                                                         U.S.D.J.

Dated: Brooklyn, New York
       August 17, 2010

9