UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
IN THE MATTER OF THE COMPLAINT                               :
                                                             :
                        Of                        :    **MEMORANDUM**
                                                             :    **DECISION AND ORDER**
MILLER'S LAUNCH, INC., as owner of a 1978                    :
31-foot motor vessel, and CITY OF NEW                        :    10 Civ. 0872 (BMC)
YORK, DEPARTMENT OF                                          :
ENVIRONMENTAL PROTECTION, as owner,                          :
and MILLER'S LAUNCH, INC., and                               :
MILLER'S LAUNCH, INC., as bareboat charter                   :
or owner *Pro Hac Vice*, of a 1994 34-foot motor             :
vessel, for Exoneration from or Limitation of                :
liability,                                                   :
                                                             :
                        Petitioners.                 :
                                                             :
------------------------------------------------------------ X

**COGAN,** District Judge

      Before me is a motion for summary judgment by third-party defendant Gaeta Interior Demolition, Inc. ("Gaeta") seeking to dismiss the third-party complaint filed against it by petitioners Miller's Launch and the City of New York (together, "petitioners"). Because I find that the contract between petitioners and Gaeta did not contain an indemnification provision, I grant Gaeta's motion and dismiss it from the action.

## **BACKGROUND**

      Familiarity with this maritime action is presumed. Briefly, petitioners instituted this action pursuant to the Limitation of Liability Act, 46 U.S.C. § 30505 *et seq.*, after Marcus Link, an employee of Gaeta, commenced a personal injury lawsuit in state court claiming that petitioners were negligent in transporting debris from navigable water at the Bowery Bay

1

Sewage Treatment Plant. This negligence, Link asserted, led to his injuries that he sustained when he was loading one of Gaeta's garbage trucks.

With regard to the present motion, petitioners filed a third-party complaint against Gaeta, claiming, *inter alia,* that Gaeta, which was retained by Miller's Launch to dispose of garbage containers at Bowery Bay, had agreed to indemnify and defend petitioners. Gaeta now moves for summary judgment, raising several arguments. It asserts that as an employer, it cannot be liable for contribution or indemnification to any third party because Link did not sustain a "grave injury" within the meaning of New York Workers' Compensation Law; that Gaeta did not expressly agree to indemnify Miller's Launch in the contract between the two parties; that a separate agreement, a "Vendex questionnaire" it signed, did not contain any indemnification language; and that it is not bound by any provision in any agreement between the City and Miller's Launch.

Petitioners' opposition seeks to maintain Gaeta in the action on one ground only: they claim that Gaeta agreed to indemnify Miller's Launch in the contract between the two parties.[1] Petitioners argue that the indemnification contract between Miller's Launch and Gaeta consists of two documents. The first is a request for proposal that was faxed by Miller's Launch to Gaeta on March 7, 2002. This three-page document concluded by stating the following:

> Additionally the City requires all subcontractors in order to be approved by the City to perform work under an agency contract to agree and hold harmless the contractor and the City of New York and the specific agency, as regards [sic] all work performed and to agree to defend said entities against all suits that may arise from work performed.

---

[1] Petitioners state in their opposition that Gaeta's other arguments are irrelevant. They agree that the Vendex questionnaire does not contain the indemnification provision. As for Gaeta's argument that it is not bound to any indemnification provision between the petitioners, they claim that it is "not technically accurate, nor important" because the indemnification provision is found in the contract between Miller's Launch and Gaeta and because that contract also incorporates the agreement between the City and Miller's Launch. Thus, I address only the claim that the contract between Gaeta and Miller's Launch either provided for indemnification explicitly or did so by incorporation.

2

Gaeta responded with a price quote, and when the City permitted Miller's Launch to commence work, Miller's Launch sent another letter to Gaeta dated May 28, 2002. This letter began by prefacing that it is a "brief agreement to finalize our agreement for your review, comment and approval." It further provided that "[u]nder this agreement [Gaeta] shall supply and deliver per the Contract specifications as detailed in the request for proposal dated March 7, 2002, and attached hereto and made a part of this agreement. . . ." Gaeta countersigned this letter.

## DISCUSSION

In reviewing a motion for summary judgment, the Court's responsibility "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 40-41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248, 106 S. Ct. 2505, and discussing summary judgment's historic origins "as a tool for clearing the calendar of doomed lawsuits").

Summary judgment is appropriate on contract claims when the "contractual language is plain and unambiguous." Zurich Am. Ins. Co. v. ABM Indus., 397 F.3d 158, 164 (2d Cir. 2005). "Ambiguity exists when a contract is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Id. (citation and quotation marks

omitted). "The determination of whether a contract term is ambiguous is a threshold question of law for the court." Walk-In Medical Centers, Inc. v. Breuer Capital Corp., 818 F.2d 260, 263 (2d Cir. 1987).

This search for ambiguity notwithstanding, a contract assuming an indemnity obligation "must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." Tonking v. Port Auth. of N.Y. and N.J., 3 N.Y.3d 486, 490, 787 N.Y.S.2d 708 (2004). "Nevertheless, a contract of indemnity need not explicitly state an intent that the undertaking extend to the indemnitee's own negligent acts. Instead, where there is all-encompassing language in an indemnification agreement, the New York Court of Appeals has divined the 'unmistakable intent of the parties' to indemnify against the indemnitee's negligent acts." Gibbs-Alfano v. Burton, 281 F.3d 12, 19 (2d Cir. 2002) (quoting Levine v. Shell Oil Co., 28 N.Y.2d 205, 212, 321 N.Y.S.2d 81 (1971)); see also Haynes v. Kleinewefers, 921 F.2d 453, 456 (2d Cir. 1990).

Unlike most litigation over indemnification provisions – as reflected in the standard quoted above – the argument here is not over the *scope* of the indemnification clause, but whether the parties agreed to any indemnification clause at all. Still, the same principle governs this dispute – a contract that purports to shift liability through an indemnity clause must be construed strictly so as to avoid implying a duty to which the parties did not agree. Cf. Tonking, 3 N.Y.3d at 490.

The contract at issue here is unambiguous. Petitioners argue that the second letter incorporated by reference the March 7 quote request, and that the contract between the parties is comprised of both documents. I agree, but I cannot find that the quote request accomplished anything other than putting Gaeta on notice that it would *eventually* have to consent to a

reasonable indemnity provision if one were proposed. The "brief agreement" sent on May 28, 2002 began by incorporating the March 7 letter, and two paragraphs later, listed the "specifications" that were detailed in that letter, namely Gaeta's obligation to provide certain types of containers. It made no mention of indemnification. Thus, the only sentence in the request for proposal that could constitute an indemnification agreement is the one found in the March 7 letter. That sentence, however, could only be read as an agreement to agree to an indemnification clause later. See Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher, 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247 (1981).

Where the agreement to agree sets out in detail all the essential terms, it may be enforced. See Carruthers v. Flaum, 450 F. Supp. 2d 288, 311 (S.D.N.Y. 2006). By the same token, when the agreement to agree omits key elements, it becomes plain that the parties did not intend for the preliminary agreement to be a binding contract. Here, no definite terms are suggested – there is no mention, for instance, of the costs of defense; notice requirements; whether Gaeta would be expected to indemnify only for its own negligence as opposed to that of the putative indemnitees; whether the indemnification obligation would survive performance under the contract; or the myriad of other terms typically found in indemnification agreements. Thus, this is not an example of "the parties agree[ing] on all the points that require negotiation but agree[ing] to memorialize their agreement in a more formal document." Adjustrite Sys. v. GAB Bus. Servs., 145 F.3d 543, 548 (2d Cir. 1998). Although New York courts have permitted broad indemnity clauses, see Levine, 28 N.Y.2d at 212, there is no contractual language here at all, merely a notice to Gaeta that it would be expected to agree to such language.

At most, Gaeta assumed an obligation to sign a reasonably phrased indemnification agreement with Miller's Launch. But Miller's Launch never tendered one, leaving Gaeta

without the opportunity to determine whether the scope of indemnification would be reasonable. The result is an unconsummated agreement to agree on an indemnification clause. Thus, I find that as a matter of law, Gaeta did not agree to indemnify petitioners.

## **CONCLUSION**

Gaeta's motion for summary judgment [39] is granted, and the claims against it are dismissed.

**SO ORDERED.**          **Signed electronically/Brian M. Cogan**
　　　　　　　　　　　　　　　　　　　　　　　　U.S.D.J.

Dated: Brooklyn, New York
　　　　February 27, 2011